THE FAMOUS SHOE & CLOTHING COMPANY, *Appellant*, v. CROSSWHITE *et al.*

Division One, July 9, 1894.

1. Negotiable Instruments: STATUTE: LAW MERCHANT. A promissory note, to be negotiable, must conform to the statute (R. S. 1889, sec. 733), but the latter leaves all other instruments to be governed as to their negotiability by the law merchant.

2. ———: BANK CHECK. A bank check, with or without the words "value received," is negotiable.

3. Bank Check: BONA FIDE HOLDER. Until it is shown that the check was obtained from the maker by fraud, the holder is not required to show that he is a *bona fide* holder for value, to recover thereon.

4. ———: ———. One who takes a check in the usual course of business and pays full value therefor, without any notice of fraud on the maker in its issuance, can recover thereon against such maker.

5. ———; ———. The fact that the drawee of a check, in delivering it to a person who represented himself as another, relied on the custom of the bank on which it was drawn of requiring the payee of the note to be identified, constitutes no defense thereon by a *bona fide* holder.

*Transferred from St. Louis Court of Appeals.*

REVERSED.

*Wm. C. & Jas. C. Jones* for appellant.

(1) Checks are negotiable instruments and are transferable by indorsement and delivery. Tiedeman,

on Com. Paper, secs. 430, 440; Edwards on Bills, p. 84; 2 Daniel on Neg. Inst., secs. 1582, 1651; Morse on Banking, 255; *Robertson v. Coleman*, 141 Mass. 231; *Little v. Bank*, 2 Hill, 425; *Stephens v. McNeill*, 26 Barb. 656; *Fuller v. Hutchings*, 10 Cal. 523; *Merchants' Bank v. Sav. Inst.*, 33 N. J. Law, 170; *Burns v. Kahn*, 47 Mo. App. 215. (2) The evidence shows that appellant was a *bona fide* holder, and he is, therefore, entitled to recover. *Burrell v. Parsons*, 71 Me. 282; Story on Prom. Notes, sec. 191; *Brush v. Scribner*, 11 Conn. 392; *Johnson v. May*, 27 Ohio St. 374; *Brome v. Spofford*, 95 U. S. 474.

*C. P. & J. D. Johnson* for respondent.

(1) Under the admitted facts, the check in controversy is not a negotiable instrument, in the sense that the makers could not countermand its payment after it had passed into the hands of the appellant, although the appellant paid value therefor. R. S. 1889, sec. 733, p. 255; R. S. 1889, sec. 2091, p. 548; R. S. 1835, p. 104; 2 Daniels on Negotiable Instruments [4 Ed.], sec. 1567, p. 5978; Story on Promissory Notes [7 Ed.], sec. 489, p. 671, and cases cited; Tiedeman on Commercial Paper, sec. 430; 1 Edwards on Bills and Notes [3 Ed.], sec. 549, p. 396; Morse on Banks and Banking, sec. 380, pp. 622, 623, 624; 3 R. S. (New York), p. 2242; 2 Code (California), 1885, p. 532; *Bank v. Bank*, 10 Wallace (U. S.), 604; *Bull v. Bank*, 123 U. S. 110; *Austin v. Blue*, 6 Mo. 265; *St. John v. Homans*, 8 Mo. 383. (2) The appellant having accepted the check from Wilke, the holder, without knowing him or requiring him to identify himself as the payee, can not, under the custom in evidence, and the other facts admitted by the agreed statement, hold the makers for the amount it paid the man, Wilke, therefor. *Martin*

v. *Hall*, 26 Mo. 387; *Walsh v. Miss. Transportation Co.*, 52 Mo. 434; *Martindale v. Railroad*, 60 Mo. 509; *Scudder v. Ames*, 89 Mo. 508; *Renner v. Bank*, 9 Wheaton (U. S.), 582; *Mills v. Bank*, 11 Wheaton (U. S.), 438; *Ellis v. Ins. and Trust Co.*, 4 Ohio State, 628; *Park v. Vernow*, 16 Mo. App. 385; Broom's Legal Maxims, 712-720; 1 Greenleaf on Evidence, secs. 292, 294; 2 Greenleaf on Evidence, secs. 248, 251; *Moody, Michel & Co. v. Mack*, 43 Mo. 212. (3) Under the admitted facts, actual notice of the fraudulent acquiring of the check by appellant's assignor will be attributed to appellant. Bigelow on Fraud, p. 297; Kerr on Fraud and Mistake, p. 236; *Kitchen v. Railroad*, 69 Mo. 265; *Leavitt v. Laforce*, 71 Mo. 356; *Roan v. Winn*, 93 Mo. 503.

BLACK, P. J.—The plaintiff is a corporation engaged in a mercantile business in the city of St. Louis; and the defendants are partners engaged in buying and selling horses and mules, under the firm name of Crosswhite, Patton & Rubey.

This suit is based upon the following check:

"ST. LOUIS, Oct. 27, 1890.

"Pay to Herman Hickle, or order, one hundred and forty-nine x–100 dollars.

"To Mullanphy Savings Bank, ⎱ Crosswhite, Patton &
　　St. Louis, Mo. ⎰ Rubey."

Indorsed: "Herman Huickel."

The above spelling of the name of payee and indorser is taken from the check as we find it in the transcript, but hereafter we follow the statement of agreed facts in that respect. According to the agreed facts one Herman *Wilke* appeared at the defendant's place of business on the day of the date of the check, and represented his name to be Herman *Heckle*, and that he was the owner of two mules which he then sold

and delivered to the defendants, and in payment therefor they gave him the check in question. On the same day *Wilke* went to the plaintiff's place of business and purchased merchandise to the amount of $74.15, and in payment therefor indorsed the check under the name of Herman *Huickel* and delivered it to the plaintiff, and the plaintiff paid him the difference, namely, $74.85. The plaintiff received the check from *Wilke* without making inquiry of him as to how he obtained it, though he was unknown to the plaintiff's agents who sold the goods, and without his being identified. On the same day the plaintiff presented the check to the bank for payment, but payment was refused because of directions given to the bank by defendants, they having learned that the mules had been stolen by *Wilke*.

Plaintiff procured the arrest of *Wilke*, and recovered back a part of the merchandise and money. If plaintiff is entitled to recover at all, it is agreed the amount it should recover is $61.15.

The trial court gave judgment for the defendants, and that judgment was affirmed by the St. Louis court of appeals and the cause was then transferred to this court because Judge THOMPSON deemed the opinion opposed to *St. John v. Homans*, 8 Mo. 382, and *Ivory v. Bank*, 36 Mo. 475.

The first question is whether this check is a negotiable instrument. The court of appeals held that it was not, and this is the line of argument: No instrument, except a bill of exchange, is negotiable in this state, unless it appears on its face to have been issued for value received; this check does not profess on its face to have been issued for value received, nor is it a bill of exchange, and hence it is not negotiable.

The chief error in this argument lies in the major proposition which has for its authority *Lowenstein v. Knopf*, 2 Mo. App. 159, where the conclusion is

expressed that bills of exchange and instruments containing the words "value received" are the only negotiable instruments which we have in this state, because the statute declares no other instruments negotiable.

The statute provides: "Every promissory note for the payment of money to the payee therein named, or order or bearer, and expressed to be for value received, shall be due and payable as therein expressed, and shall have the same effect and be negotiable in like manner as inland bills of exchange."

It is to be remembered that for a long time Lord HOLT, held that promissory notes were not negotiable, while the merchants of Lombard street insisted they were negotiable. Parliament interfered and overruled HOLT by the act of Anne. This court at a very early day declined to follow the ruling of Lord HOLT, holding that promissory notes were negotiable by the common law. *Irvin v. Maury*, 1 Mo. 197. The legislature, however, to put the matter at rest in this state, enacted a statute which, after some changes, comes down to us in the language above quoted.

Now the object and whole object and purpose of this statute was to make promissory notes negotiable. A promissory note to be negotiable must, of course, conform in form to the statute; but the statute leaves all other commercial instruments where the law merchant places them. If negotiable by that law, they are negotiable in this state. This is too clear to admit of any doubt.

Are checks negotiable by the law merchant? Before answering this question it is well to remember that some writers treat checks as bills of exchange, with some peculiarities; while other writers treat them as distinct commercial instruments, having some features in common with bills of exchange. While the controversy is largely one of words only, the latter

Shoe & Clothing Co. v. Crosswhite.

method of treating checks seems to be the least objectionable, because it comports with commercial usage. It is said by the supreme court of the United States: "Bank checks are not inland bills of exchange, but have many properties of such commercial paper; and many of the rules of the law merchant are alike applicable to both;" and the court then goes on to point out many matters in which they are alike and many in which they differ.

As to the element of negotiability it is said: "Checks are commercial paper, and are generally affected by the rules which affect commercial paper. Thus the holder of a check payable to bearer, or indorsed in blank, is presumed to be the owner, *bona fide*, and for value. It is only after proof that the original issue of the check was a fraud, or that it was lost by the drawer before issue, that such a holder will be required to show his *bona fides* to prove that he has given value for the check, and that he has come into possession of it in the usual course of business. If, being obliged to show these facts, he does so successfully, it then makes no difference under what circumstances of fraud or loss the check originally left the drawer's hands; the holder shall retain and shall recover upon it at least as much as he has paid for it." 1 Morse on Banks and Banking [3 Ed.], sec. 393.

Another writer says: "A check, like a bill or note, in order to be negotiable, must be payable absolutely and at all events to a certain person or order, or to bearer, in money." And "whenever a check is negotiable, it is undoubtedly subject to the same principles which govern ordinary bills of exchange in respect to the rights of the holder." 2 Dan. on Negotiable Inst. [4 Ed.], secs. 1651 and 1652. See, also, to the same effect, Tiedeman on Com. Paper, sec. 440. *Burnes v. Kahn & Furst*, 47 Mo. App. 216; *Fulweiler v. Hughes*,

17 Pa. St. 440; *Fuller v. Hutchings*, 10 Cal. 523; *Bank v. Savings Institution*, 33 N. J. L. 170; *Bank v. Heald*, 25 Md. 573.

We find nothing in any of the cases in this court to which we are cited which is in conflict with what has been said. They discuss other properties and qualities of checks. The remarks made in *St. John v. Homans*, 8 Mo. 382, and in *Morrison v. McCartney*, 30 Mo. 186, go far to show that the court deemed checks negotiable instruments. It is true the drawer of a check may stop payment, and in doing so he takes upon himself all the consequences of his act; but this has nothing to do with the question in hand.

Although the check in question does not contain the words "value received," it is a negotiable instrument, and the plaintiff's rights must be governed accordingly. The plaintiff was not, in the first instance, bound to account for possession of the check; but it being shown, as it was, that the check was procured by the payee by fraud, it then devolved upon the plaintiff to show that it was a *bona fide* holder. With such a showing, the plaintiff was entitled to recover. 2 Dan. on Neg. Inst. [4 Ed.], sec. 1652; 1 Morse on Banks and Banking [3 Ed.], sec. 393. *Bank v. Savings Institution*, 33 N. J. L. 170; *Fuller v. Hutchings*, 10 Cal. 523. The agreed facts show that plaintiff took the check in the usual course of business, and paid full value therefor, without any notice of the fraud. The loss must therefore fall upon defendants, who issued and put it in circulation. To hold otherwise would overthrow what we understand to have always been the law in this state.

2. The defendants place considerable reliance in this court upon the custom stated in the following further agreed facts:

"At the time the defendants stopped the payment of said check as aforesaid, they did not know that it had been transferred to plaintiff, nor did plaintiff know the circumstances under which the said Wilke had obtained the same from defendants, nor that payment thereof had been stopped by them, or that he was not Herman Huickel.

"It was then and there the custom of the said Mullanphy Savings Bank, as well as of all other banks of the city of St. Louis, to require persons presenting checks drawn upon it, if unknown to its officers or agents, to identify themselves to the said bank before paying the amount called for by the check. This custom was then and there well known both to the plaintiff and the defendants, and the said Mullanphy Savings Bank would not have paid the said check to the said Wilke without his being known or identified to the said bank or its officers as Herman Heckle, the payee therein named, if he had presented the same to the bank for payment. The defendants gave the said check to the said Wilke in payment of said mules because they did not know him personally, and because they knew of the custom of said bank, and that he would have to be known or identify himself to the said bank or its officers before the amount of said check would be paid to him by the bank."

We can not see that this custom affects the rights of the plaintiff in the least. It relates alone to the identification of persons who present checks to banks for payment, and is no more than the usual precaution which banks adopt for their own protection. It does not attempt or undertake to limit, restrict or qualify the negotiable character of checks. The custom is no defense whatever to this action. The judgment of the court of appeals is reversed and the cause remanded to

that court, with directions to it to reverse the judgment of the circuit court and to direct the circuit court to enter up judgment for the plaintiff. All concur.